UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| KIMBERLY CLARK,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　-against-<br><br>CDR MAGUIRE INC.,<br><br><br>Defendant. | **Case No.**: 2:24-cv-978<br><br>**DEMAND FOR JURY TRIAL** |

# COMPLAINT

Plaintiff KIMBERLY CLARK ("Plaintiff"), by and through her attorneys, CONSUMER ATTORNEYS PLC, hereby complains of Defendant and states as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and seeks damages to redress the injuries Plaintiff has suffered as a result of being **sexually harassed and discriminated against by Defendant on the basis of her sex/gender (female), resulting in Plaintiff being subjected to a hostile work environment and retaliating against Plaintiff by unlawfully causing her constructive termination after she complained of sexual harassment.**

## JURISDICTION, VENUE, AND PROCEDURAL PREREQUISITES

2. Jurisdiction of this Court is proper under 29 U.S.C. § 216(b), 42 U.S.C. § 2000e-5(f)(3), and 28 U.S.C. §§ 1331 and 1343.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as the acts complained of occurred in the Middle District of Florida.

1

4. By: (a) timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 27, 2024; (b) receiving a Notice of Right to Sue from the EEOC on August 2, 2024; (c) commencing this action within 90 days of the issuance of the Notice of Right to Sue by the EEOC, Plaintiff has satisfied all of the procedural prerequisites for the commencement of the instant action. A copy of the Notice of Right to Sue is annexed hereto as **Exhibit A**.

## PARTIES

5. At all relevant times, Plaintiff was and is a resident of Houston County, State of Georgia.

6. Upon information and belief, Defendant CDR Maguire Inc. ("Defendant" or "CDR") is a Florida business corporation with a principal executive office located at 11740 SW 80th Street #102, Miami, FL 33183.

7. At all relevant times, Defendant CDR employed at least fifteen employees.

8. Throughout the duration of her employment, Plaintiff worked in Fort Myers, Florida.

9. Defendant was the employer of Plaintiff and held the authority of hiring, firing, discipline, and supervision as to Plaintiff.

10. Plaintiff was under the supervision and direction of managers for Defendant.

11. Defendant paid Plaintiff and was responsible for assisting Plaintiff with time off and informing her of vacation or approval of sick days.

12. Defendant set Plaintiff's work schedule, had the ability to discipline Plaintiff, and controlled Plaintiff's work tasks and work conditions, and could otherwise affect Plaintiff's conditions of employment, including terminating her.

13. At all relevant times, Defendant was and is an employer within the meaning of Title VII.

14. At all relevant times, Plaintiff was and is a member of a protected class under Title VII (female).

15. At all relevant times, the work performed by Plaintiff was directly essential to the business operated by Defendant.

## STATEMENT OF FACTS

16. In or around January 15, 2023, Plaintiff began working for Defendant's branch, CDR Maguire Emergency Management ("Emergency Management") as a "Debris Moniter" in Fort Myers, Florida to assist with the clean-up and restoration efforts following Hurricane Ian.

17. Emergency Management was retained to monitor the hauling away of debris left over in Fort Myers, Florida in the aftermath of Hurricane Ian.

18. While employed by Defendant, Plaintiff's supervisor was Kenyan Grimes ("Kenyan").

19. Kenyan was Plaintiff's supervisor and/or had supervisory authority over Plaintiff. Kenyan had the authority to hire, fire, affect the terms and conditions of Plaintiffs' employment, or influence the decisionmaker of same.

20. In or around June 3, 2023, at approximately 1:00 P.M., Plaintiff was at working and speaking to one of the workers on her crew, whose name Plaintiff does not recall ("Crewmember").

21. While speaking to Crewmember, Plaintiff was approached from behind by another worker known to her at the time only by the nickname "Donkey" ("Donkey"), who pressed his erection against Plaintiff while whispering in her ear in Spanish.

22. Plaintiff does not speak Spanish, but understood whatever Donkey had whispered in her ear to be vulgar and/or sexual in nature.

23. Plaintiff was shocked and disgusted by this blatant act of sexual harassment, and immediately retreated away and approached another co-worker, Kelby Nelson ("Kelby"), who was employed as a grapple driver.

24. Plaintiff was distraught and confided in Kelby what she had just been subjected to by Donkey.

25. Kelby immediately called his supervisor, Adam Cole ("Adam") while Plaintiff called her supervisor, Kenyan.

26. Kenyan was unresponsive to Plaintiff's call, but Adam arrived at the scene shortly after being called and instructed Donkey to gather his belongings and leave.

27. Adam approached Plaintiff and stated that he "handled it" and left the scene, with Kenyan arriving shortly thereafter.

28. Upon arriving, Plaintiff informed Kenyan of what happened and filled out a written incident report documenting the harassment which Kenyan said he would submit to Defendant's Human Resources ("HR") department.

29. On or about June 5, 2023, Plaintiff approached Kenyan and inquired on the status of her incident report.

30. Plaintiff was informed that HR had decided not to act on her incident report because it included "derogatory terms."

31. Specifically, Plaintiff used the word "amigos" in her complaint and referred to Donkey as "Donkey", the only name she knew him by – these terms were deemed "derogatory" by Defendant's HR and were given greater attention and priority than Plaintiff's actual complaint of sexual harassment.

32. Kenyan informed Plaintiff that she would need to re-write and re-submit a new incident report without the inclusion of the aforementioned "derogatory terms" before Defendant would take any action to address her complaints of sexual harassment.

33. Plaintiff was shocked as to why her genuine complaint of sexual harassment in the workplace would be ignored by Defendant and why she was not notified of it until two days after submitting it.

34. Plaintiff felt humiliated, anxious, shocked, and appalled as her genuine complaint of suffering sexual harassment in the workplace was being blatantly ignored by Defendant.

35. Nonetheless, Plaintiff rewrote and submitted a new incident report to be submitted to Defendant in or about June 5, 2023.

36. On or around June 7, 2023, Plaintiff arrived to work for Defendant and was shocked to find Donkey present at her worksite.

37. Upon information and belief, Defendant had taken no efforts to investigate nor discipline Donkey for sexually harassing Plaintiff.

38. Plaintiff immediately contacted Kenyan, expressing her distress at having to work for Defendant alongside her harasser.

39. Plaintiff also inquired of the status on her incident report, anxiously wondering why Defendant had taken no action to address the sexual harassment and gender discrimination Plaintiff had faced.

40. Unfortunately, Plaintiff's complaints were ignored, and she was told to try and avoid Donkey.

41. On or around June 8, 2023, Donkey and his co-workers were brought to work with Plaintiff's crew, despite Plaintiff having submitted two complaints to Defendant informing Defendant that Donkey had sexually harassed Plaintiff.

42. Plaintiff felt distressed, as Defendant had put in her a hostile work environment by forcing her to work with her harasser.

43. Plaintiff was distraught and immediately called Kenyan and Adam to request that Donkey be removed from her crew.

44. Shortly after Donkey was removed by Kenyan and Adam, other workers began to harass Plaintiff for calling supervisors on Donkey, furthering the hostile work environment Plaintiff faced.

45. On or around June 9, 2023, Plaintiff arrived to work to find Donkey was once again assigned to work with her crew.

46. On or around June 10, 2023, Donkey and his co-workers began to taunt Plaintiff by pointing and laughing at her while making jokes in Spanish.

47. On or around June 11, 2023, Plaintiff once again inquired of the status of her incident report, confused as to why she was still being forced to work with Donkey after he had sexually harassed her And was continuously facing harassment by Donkey and his friends at Defendant's worksite.

48. Much to Plaintiff's dismay, she continued to receive no response regarding the status of her complaint from Defendant.

49. Again, on or around June 19, 2023, Plaintiff was made to work with Donkey and again Plaintiff reached out to Defendant regarding the status of her complaint, only to continue to be ignored.

50. Plaintiff's numerous inquiries into the status of her complaint regarding sexual harassment and discrimination in the workplace were repeatedly ignored by Defendant.

51. Further, Plaintiff was continuously forced to work with Donkey and suffer from a hostile work environment by being made to work in close proximity with her harasser on or around the dates of July 20, 2023; July 21, 2023; August 3, 2023; and August 5, 2023.

52. The above are just some of the examples of the harassment and discrimination that Plaintiff had to endure while working for Defendant.

53. On or around August 8, 2023, Plaintiff received a message from Kenyan asking her if she recalled the date of incident when Donkey sexually harassed her.

54. Plaintiff was shocked, having not heard any word back from Defendant regarding her incident report only to be asked about basic information included in it.

55. Plaintiff responded to Kenyan reminding him of the date of the sexual harassment by Donkey and continued to not hear any word back regarding the investigation.

56. Upon information and belief, Kenyan never escalated Plaintiff's complaints.

57. On or around August 26, 2023, Plaintiff spoke with a different supervisor, whose name Plaintiff does not recall, ("Supervisor") who advised Plaintiff to go above Kenyan and try to appeal to Defendant directly regarding her situation.

58. At this time, Plaintiff began feeling she had no choice but to resign from her employment with Defendant despite wanting to stay to finish her contract.

59. Plaintiff felt that she had no choice but to resign due to the hostile work environment Defendant had created by forcing her to work with her harasser and refusing to take any steps to investigate her complaints of sexual harassment.

60. By creating a hostile work environment where Plaintiff was forced to work with her harasser and her continued complaints were ignored, Defendant had constructively terminated Plaintiff's employment.

61. On or around September 15, 2024, Plaintiff sent an email directly to an HR representative named Audrea Gillespis ("Audrea"), explaining all that had transpired since June 2023 and received no response.

62. Specifically, Plaintiff explained that she had been sexually harassed by Donkey in or around June 3, 2023, and that after having submitted two incident reports regarding the harassment, was forced to continue to work with Donkey as part of her crew for several months.

63. On or around September 18, 2024, Plaintiff followed up on her email to Audrea only to receive a generic message informing her an HR representative would reach out to her later.

64. In or about September 25, 2024, Plaintiff reached out to the EEOC to file a claim against Defendant regarding the discrimination she had faced.

65. Plaintiff later learned the reason she could never learn the name of Donkey was because he was given fake names by Defendant due to his status as an undocumented immigrant.

66. In or around May 14, 2024, after Plaintiff was constructively terminated and filed her EEOC charge, Defendant finally reached out to Plaintiff to discuss the sexual harassment and discrimination she was subjected to while employed by them.

67. Defendant did not take any steps to contact Plaintiff regarding the sexual harassment/discrimination she was subjected to until after she had filed an EEOC charge of discrimination against them.

68. Plaintiff was forced to quit Defendants' employment due to the sexual harassment, discrimination, and sexual comments that she faced on the job and the retaliation that followed as a result of her gender/sex.

69. Plaintiff's employment was constructively terminated by Defendant by ignoring her complaints and sexual harassment and creating a hostile work environment where she was consistently forced to work closely with Donkey after he had sexually harassed her.

70. Defendant failed to place Plaintiff in any other job site after she complained of sexual harassment.

71. Plaintiff felt extremely uncomfortable and offended by Defendant's discriminatory conduct and harassment.

72. Plaintiff was subjected to and suffered discriminatory treatment and sexual harassment solely due to her gender/sex (female).

73. Plaintiff's work environment was permeated with hostility due to her gender/sex.

74. Defendant refused to address the hostile work environment, discipline employees, or attempt to put a stop to the hostile work environment.

75. Defendant unlawfully, knowingly, and willfully discriminated against and harassed Plaintiff based on her gender/sex by subjecting Plaintiff to sexual harassment and unwelcome sexual advances, hostile work environment, and other verbal harassment of a sexual nature, in violation of Title VII.

76. Defendants knowingly and willfully subjected Plaintiff to inferior terms, conditions, or privileges of employment due to her gender/sex.

77. Defendant had **knowledge of and/or acquiesced in** the gender/sex discrimination by their employees and clients.

78. **Defendant has engaged in and continues to encourage and foster a policy and practice of gender/sex discrimination and allowing sexual harassment to occur in the workplace.**

79. As a result of the acts and conduct complained of herein, Plaintiff feels extremely humiliated, degraded, victimized, embarrassed, belittled, and emotionally distressed.

80. Plaintiff has been unlawfully discriminated against by Defendant, and as a result, suffers a violation of her rights, emotional distress, loss of income/earnings, loss of salary, loss of benefits, legal fees and expenses, economic hardship, inconvenience, and emotional pain and suffering.

81. Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

82. As such, Plaintiff demands punitive damages as against Defendant.

## FIRST CAUSE OF ACTION
## DISCRIMINATION UNDER TITLE VII

83. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

84. Title VII prohibits an employer from discriminating against any individual with respect to their terms, conditions, or privileges of employment because of such individual's **sex**.

85. Plaintiff is an employee and a qualified person within the meaning of Title VII and Defendant is a covered employer within the meaning of Title VII.

86. Defendant operates a business that unlawfully discriminated against Plaintiff in violation of Title VII by discriminating against Plaintiff because of her **sex (female)**.

## AS A SECOND CAUSE OF ACTION
## FOR RETALIATION UNDER TITLE VII

87. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

88. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

89. Defendant violated the sections cited herein as set forth.

## JURY DEMAND

90. Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A. Declaring that Defendant engaged in unlawful employment practices prohibited by Title VII by discriminating against Plaintiff on the basis of her sex/gender and retaliating against Plaintiff by unlawfully terminating her after she complained of sexual harassment;

B. An injunction against Defendant and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

C. Awarding damages to Plaintiff for all lost wages and benefits, past and future, back and front pay, resulting from Defendant's unlawful employment practices and to otherwise make her whole for any losses as a result of such unlawful employment practices;

D. Awarding Plaintiff compensatory damages for mental, emotional, and physical injury, distress, pain, and suffering and injury to her reputation in an amount to be determined;

E. Awarding Plaintiff punitive damages;

F. Awarding Plaintiff pre-judgment and post-judgment interest; costs and expenses incurred in the prosecution of this action, and reasonable attorneys' fees; and

G. Awarding Plaintiff such other legal and equitable relief as the Court deems just and proper.

Dated: October 21, 2024

**CONSUMER ATTORNEYS**

*/s/ Catherine Tillman*
Catherine Tillman, FL #0057663
8245 North 85th Way
Scottsdale, Arizona 85258
T: (941) 263-7310
F: (718) 715-1750
E: ctillman@consumerattorneys.com
*Attorney for Plaintiff*
*Kimberly Clark*