UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KIMBERLY CLARK,

          Plaintiff,

                                 Case No. 2:24-CV-978-KCD-KRH

    v.

CDR MAGUIRE INC.,

          Defendant.

                                 /

## <u>ORDER</u>

Plaintiff Kimberly Clark previously worked for Defendant CDR Maguire Inc. She claims her time there was marked by sex discrimination, a hostile work environment, and retaliation. Clark now sues CDR under Title VII of the Civil Rights Act of 1964 and seeks summary judgment. (Doc. 1; Doc. 38.)[1] CDR has responded (Doc. 39), and itself moves for summary judgment. (Doc. 44.) For the reasons below, Clark's motion is **DENIED** and CDR's motion is **GRANTED**.

## I. Background

Following hurricane Ian, the State of Florida contracted with two private companies to help with local recovery: Hauling Away and CDR. Hauling Away is a disaster response company, and it was tapped to remove

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

debris. (Doc. 39 ¶ 9; Doc. 43 ¶ 9.) CDR is an "emergency management company" that was tasked with monitoring Hauling Away's debris removal. (Doc. 39 ¶ 1.)

Clark worked for CDR as a debris monitor. (Doc. 1 ¶ 16.) Her job stationed her at demolition sites and required her to "document the types and amounts of debris" Hauling Away removed. (Doc. 39 ¶ 1.) While at one of these job sites, Clark claims a Hauling Away employee known to her as "Donkey" pressed his erect penis against her backside while whispering a Spanish word in her. (Doc. 1 ¶ 21.) Though Clark doesn't speak Spanish, she believed the whispering was sexually-natured. (*Id.* ¶ 22.) Hauling Away removed Donkey from the job site, and Clark immediately reported the incident to her CDR supervisor. (Doc. 38 ¶¶ 12, 13; Doc. 44 ¶¶ 12, 13.) But Clark says things only got worse.

Over the next three months, Donkey was assigned to her worksite "on multiple occasions." (Doc. 38 ¶¶ 22-25.) She claims Donkey once "smirked and laughed" when he came near her. (*Id.* ¶ 22.) Meanwhile, Hauling Away's other employees laughed and sexually gestured towards her almost daily. (*Id.* ¶ 25.) Clark says she complained to her supervisor about continuing to see Donkey, yet admits she never reported the other behavior to anyone. (*Id.* ¶ 23, 24, 27; Doc. 38-1 at 187.) Ultimately, Clark claims the workplace became so unbearable she was forced to quit. (Doc. 1 ¶¶ 58-60.)

2

Clark now sues CDR for sex discrimination, maintaining a hostile work environment, and retaliation. (Doc. 1.) Both parties seek summary judgment. (Doc. 39; Doc. 40.)

## II. Legal Standard

Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Smothers v. Childers*, 159 F.4th 922, 930 (11th Cir. 2025). "When deciding a motion for summary judgment, a judge is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Las Brisas Condo. Homes Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:21-CV-41-KCD, 2023 WL 8978168, at *1 (M.D. Fla. Dec. 28, 2023). A genuine issue exists if a reasonable jury could return a verdict for the nonmoving party. *See, e.g.*, *Martinez v. GEICO Cas. Ins. Co.*, 152 F.4th 1323, 1330 (11th Cir. 2025). "And a fact is material if it might affect the outcome of the suit under the governing law[.]" *Gervin v. Florence*, 139 F.4th 1236, 1245 (11th Cir. 2025).

The moving party "bears the initial burden to demonstrate the basis for its motion, and must identify the portions of the record which it believes demonstrates the absence of a genuine issue of material fact." *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018). "The burden then shifts to the non-moving party to rebut that showing by producing affidavits

or other relevant and admissible evidence beyond the pleadings." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012). In reviewing the evidence, the court draws all reasonable inferences in the nonmoving party's favor. *See Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020).

### III. Discussion

"[F]ew pieces of federal legislation rank in significance with the Civil Rights Act of 1964." *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 649-50 (2020). Title VII of the Act "outlawed discrimination in the workplace on the basis of race, color, religion, sex, or national origin." *Id.* at 650. It bars employers from subjecting its employees to discriminatorily hostile work environments. *See Copeland v. Georgia Dep't of Corr.*, 97 F.4th 766, 774 (11th Cir. 2024); *Short v. Immokalee Water & Sewer Dist.*, 165 F. Supp. 3d 1129, 1141 (M.D. Fla. 2016). It also prohibits retaliation against employees who oppose unlawful employment practices. 42 U.S.C. § 2000e-3(a); *Gogel v. Kia Motors Mfg. of Georgia, Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020).

Clark seeks summary judgment on a trio of Title VII claims. She says it is undisputed that CDR subjected her to sex discrimination and a hostile work environment. She also claims to have evidence proving that CDR retaliated against her. CDR sees things differently. It contends that Clark cannot prove sex-discrimination before lobbing a *Faragher-Ellerth* defense at

her hostile-work-environment claim. It then closes by claiming Clark can't link it to any retaliatory adverse employment action.

CDR is right. Clark abandoned her sex-discrimination claim. She also failed to promptly report any harassing behavior to CDR's human resources department, as required by company policy. And nothing ties CDR to the retaliatory harassment she endured. CDR is therefore entitled to summary judgment while Clark is not. The Court tackles each claim in turn.

### a. Sex Discrimination

Clark waves the white flag here. She expressly "takes no position on CDR's claim that [she] cannot prove a prima facie case of sex discrimination." (Doc. 43 at 7.) In doing so, she effectively abandons this claim. *See Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001) (finding claim abandoned when argument not presented in response to motion for summary judgment). CDR is thus entitled to summary judgment here. *See Heining v. City of Anniston, Alabama*, No. 1:15-CV-1363-VEH, 2017 WL 4265382, at *10 (N.D. Ala. Sept. 26, 2017).

### b. Hostile Work Environment

As an initial matter, CDR wants Clark's hostile-work-environment claim dismissed because it was not properly pled. To be sure, Clark should have alleged this claim separately. *See, e.g., Riley v. CSX Transportation, Inc.*, No. 3:23-CV-960-MMH-LLL, 2023 WL 5302973, at *1 (M.D. Fla. Aug.

17, 2023) (noting that Title VII claims traveling under related, yet distinct, theories should be brought via separate counts). Yet CDR was not in the dark about what is at issue. The Title VII count incorporates several preceding paragraphs which explicitly allege a hostile work environment. (Doc. 1 ¶ 1, 42, 44, 51, 59, 70, 69, 74, 75, 83.) And CDR's briefing shows it had little trouble recognizing this. Accordingly, the Court declines to dismiss this claim on pleading grounds. *See Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, 942 F.3d 1200, 1208 (11th Cir. 2019); *Amin v. Mercedes-Benz USA, LLC*, 349 F. Supp. 3d 1338, 1354 (N.D. Ga. 2018) (declining to dismiss complaint as a shotgun pleading where defendant clearly comprehended plaintiff's theory of liability).

Now to the merits. To prevail on her hostile work environment claim, Clark must prove five elements: (1) that she belong to a protected group, (2) she was subject to unwelcome harassment, (3) the harassment was based on a protected characteristic, (4) the harassment was sufficiently severe or pervasive to alter the conditions of her employment, and (5) her employer was responsible for the hostile work environment. *Copeland*, 97 F.4th at 774-75. But even when all these boxes are checked, an employer can dodge liability by mounting a *Faragher-Ellerth* defense. *See Baldwin v. Blue Cross/Blue Shield of Alabama*, 480 F.3d 1287, 1303 (11th Cir. 2007). This defense requires an employer show two things: (1) that "it exercised

reasonable care to prevent and correct promptly any sexually harassing behavior," and (2) that "the employee unreasonably failed to take advantage of any preventive or corrective opportunities it provided." *Id.*

CDR has proven this defense as a matter of law. First, it plainly sought to prevent such behavior. An employer meets this initial burden by showing it published and circulated an anti-harassment policy to its employees. *See Cooper v. CLP Corp.*, 679 F. App'x 851, 854 (11th Cir. 2017); *Madray v. Publix Supermarkets, Inc.*, 208 F.3d 1290, 1298 (11th Cir. 2000). CDR had a clear anti-sexual-harassment policy in place when it hired Clark. It advised her of the policy when it gave her an employee handbook. It referenced the policy during Clark's orientation and training. And it even furnished Clark with a standalone acknowledgment form expressly detailing the policy— which Clark apparently read, understood, and signed.

Clark claims she does not recall receiving the sexual harassment policy. (Doc. 38-1 at 73-75, 76, 79, 81.) But she's got to do better than that. "[A] witness's inability to remember an event, standing alone, generally does not create a genuine issue of fact for summary judgment purposes." *Wells v. CRST Malone, Inc.*, No. 2:15-CV-01884-RDP, 2017 WL 6619153, at *3 (N.D. Ala. Dec. 28, 2017). Clark doesn't deny that she received CDR's policy. She instead hedges, claiming she cannot remember but it's possible she did. (Doc. 38-1 at 76, 81.) Nothing about her testimony negates CDR's evidence. *See*

*Chandler v. James*, 985 F. Supp. 1094, 1100 (M.D. Ala. 1997) ("The nonmoving party must come up with evidence that negates the version of events alleged by the moving party—an acknowledgment that the event may have occurred, but the witness cannot remember, falls short."). It is thus undisputed that CDR provided Clark with its anti-harassment policy. *See Linao v. GCR Tire Centers*, No. 2:09-CV-134-RWS, 2010 WL 4683508, at \*5 (N.D. Ga. Nov. 12, 2010) ("[W]here the only evidence negating the existence of an event is a witness's failure to remember that event, other courts have declined to find a genuine issue of fact for summary judgment purposes."). CDR therefore satisfies the preventative-portion of the test.

The same goes for the corrective-action component. "[T]he question of whether an employer timely acted to correct harassment turns on when it had proper notice of an employee's harassment complaint." *Frederick v. Sprint/United Mgmt. Co.*, 246 F.3d 1305, 1315 (11th Cir. 2001). "[O]nce an employer has promulgated an effective anti-harassment policy and disseminated that policy and associated procedures to its employees, then it is incumbent upon the employees to" follow that policy. *Madray*, 208 F.3d at 1300. If an employee reports sexual harassment to the policy's designated point-person, "the employer is deemed" on-notice of that conduct. *Breda v. Wolf Camera & Video*, 222 F.3d 886, 889 (11th Cir. 2000). Employers do not have proper notice, however, where an employee sidesteps its policy by

8

complaining to some *non*-designated person. *See Madray*, 208 F.3d at 1300 ("[W]e conclude that Publix cannot be considered to have been placed on notice of Selph's harassing behavior by the plaintiffs' informal complaints to individuals not designated by Publix to receive or process sexual harassment complaints."); *Cooper v. CLP Corp.*, 679 F. App'x 851, 855 (11th Cir. 2017); *Minix v. Jeld-Wen, Inc.*, 237 F. App'x 578, 582 (11th Cir. 2007).

CDR's policy requires employees to immediately report sexual harassment to its HR department. (Doc. 39-13.) Clark never did this. She instead reported Donkey's conduct to her supervisor right after it happened. (Doc. 38-1 at 77-78.) She did not alert HR of the incident until months later, after she had already quit. (*Id.* at 175.) And she told no one about the harassment the other men were subjecting her to. (*Id.* at 187.) CDR thus never had proper notice of the sexual harassment she experienced, and therefore was not obligated to take any corrective action. *See Madray*, 208 F.3d at 1300; *Minix*, 237 F. App'x at 582. Given this, the first element of CDR's *Faragher-Ellerth* defense is satisfied.

Ditto for prong two. Again, this element demands evidence that the plaintiff "unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." *Baldwin*, 480 F.3d at 1306. An employee's failure to use her job's complaint procedure "will normally suffice." *Faragher v. City of Boca Raton*,

524 U.S. 775, 808 (1998); *see also Frederick*, F.3d at 1314 (11th Cir. 2001). Clark lodged her concerns outside CDR's complaint-procedure and offers no reasonable explanation justifying that choice. She thus unreasonably failed to take advantage of CDR's corrective opportunities. *Cf. Frederick*, 246 F.3d at 1314 ("[I]n some cases, the proof will show that the employee's non-compliance was reasonable under the circumstances and, in these cases, the defendant cannot satisfy the second element of the affirmative defense."); *see Walton v. Johnson & Johnson Servs., Inc.*, 347 F.3d 1272, 1289 (11th Cir. 2003); *Speaks v. City of Lakeland*, 315 F. Supp. 2d 1217, 1229 (M.D. Fla. 2004).

In short, there is no real dispute over CDR's *Faragher-Ellerth* defense. Clark fails to refute that she received CDR's anti-harassment policy. She concedes that she raised no concerns to HR until well after the incident date. And she admits that she was silent about any subsequent harassment. Against this backdrop, CDR avoids liability—regardless of whether Clark's hostile-work-environment claim hits all the elements. *See, e.g., Baldwin*, 480 F.3d at 1303.

### c. Retaliation

For retaliation under Title VII, a plaintiff must show (1) that she engaged in a protected activity, (2) that she suffered an adverse employment action, and (3) that a causal relation exists between the two events. *Gogel*,

10

967 F.3d at 1134-35; *Vincent v. Jefferson Cnty. Bd. of Educ.*, 152 F.4th 1339, 1352 (11th Cir. 2025). Retaliatory discrimination "is actionable whether or not the mistreatment rises to the level of a tangible employment action." *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 861 (11th Cir. 2020). "In the context of a Title VII retaliation claim, a materially adverse action means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Crawford v. Carroll*, 529 F.3d 961, 974 (11th Cir. 2008).

Clark's complaint concerning Donkey's conduct constitutes protected activity. *See Pipkins v. City of Temple Terrace, Fla.*, 267 F.3d 1197, 1201 (11th Cir. 2001) ("Statutorily protected expression includes internal complaints of sexual harassment to superiors[.]"); *Scott v. Publix Supermarkets*, No. 07-60624-CIV, 2008 WL 2940672, at *9 (S.D. Fla. July 28, 2008) (concluding plaintiff engaged in protected activity by complaining of sexual harassment to individuals other than "the appropriate personnel listed" in her employer's sexual harassment policy). But whether CDR is on the hook for any subsequent retaliatory act is a different story.

Clark insists that she suffered two adverse employment actions. First, she contends that CDR's failure to act on her complaint would discourage reasonable employees from raising discrimination claims. But an employer's "failure to investigate is not, by itself, an adverse employment action." *Colas*

11

*v. Lourdes-Noreen McKeen Residence for Geriatric Care, Inc.*, No. 21-CV-81117, 2021 WL 4896891, at *6 (S.D. Fla. Sept. 29, 2021); *see also Entrekin v. City of Panama City Fla.*, 376 F. App'x 987, 995 (11th Cir. 2010); *Perry v. Schumacher Grp. of Louisiana*, No. 2:13-CV-36-FTM-29DNF, 2020 WL 6938391, at *3 (M.D. Fla. Nov. 25, 2020); *Wesolowski v. Napolitano*, 2 F. Supp. 3d 1318, 1348 (S.D. Ga. 2014); *Pritchett v. Heat Transfer Prods. Grp., LLC*, No. 2:20-CV-01733-AKK, 2021 WL 2042950, at *5 (N.D. Ala. May 21, 2021). At best, Clark's evidence "shows only a failure to act, not a material adverse action sufficient to make out a retaliation claim." *Williams-Evans v. Advance Auto Parts*, 843 F. App'x 144, 150 (11th Cir. 2021). So this alone will not cut it.

Clark next claims that CDR's failure to address her sexual harassment complaint culminated in her constructive discharge. She recounts other Hauling Away employees laughing and sexually gesturing towards her after she reported Donkey's harassment. She claims this happened daily over the next three months. And she insists this created a workplace so intolerable that it forced her to quit.

Title VII indeed prohibits employers from creating "a hostile work environment in retaliation for an employee's engagement in protected activity." *Tonkyro v. Sec'y, Dep't of Veterans Affs.*, 995 F.3d 828, 835 (11th Cir. 2021). And "[c]onstructive discharge occurs when an employer

12

deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job." *Bryant v. Jones*, 575 F.3d 1281, 1298 (11th Cir. 2009); *Lukie v. MetLife Grp., Inc.*, No. 22-10967, 2024 WL 4471109, at *7 (11th Cir. Oct. 11, 2024). But *deliberately* is the operative word here.

Nothing shows CDR was aware of the ensuing hostile work environment Clark endured. Clark herself concedes that she never mentioned any ensuing harassment to her supervisor or anyone else at CDR. And Clark's supervisor similarly says this was never brought to his attention. CDR therefore cannot be said to have retaliated against Clark through means it was uninvolved in and unaware of. *See Alford v. Martin & Gass, Inc.*, 391 F. App'x 296, 304 (4th Cir. 2010) (finding no basis for imputing liability for retaliatory harassment to plaintiff's employer where plaintiff "conceded that he never reported the harassment" and had "not otherwise shown that [his employer] was aware of it."); *cf. Llampallas v. Mini-Cirs., Lab, Inc.*, 163 F.3d 1236, 1244-45 (11th Cir. 1998).

Clark's claim might have worked had CDR known she was being harassed. *See Schaefer v. Athens Downtown Dev. Auth.*, No. 3:10-CV-28 CDL, 2011 WL 3925093, at *6 (M.D. Ga. Sept. 7, 2011). But all the evidence points the other way. So CDR cannot be blamed for creating or enabling an adverse employment action it was oblivious to. *See Alford*, 391 F. App'x at 305. Accordingly, CDR is entitled to summary judgment on this claim too.

13

## IV. Conclusion

For the above reasons, Clark's Motion for Summary Judgment (Doc. 38) is **DENIED**, while CDR's Motion for Summary Judgment (Doc. 39) is **GRANTED**. The Clerk is **DIRECTED** to enter judgment for CDR, terminate all pending motions, and close the case.

**ORDERED** in Fort Myers, Florida on June 4, 2026.

Kyle C. Dudek
United States District Judge